UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARIO JERMAINE CLARKE #292325,

        Petitioner,

v.

JAMES SCHEIBNER,[1]

        Respondent.

_____/

Case No. 1:21-cv-251

Hon. Janet T. Neff

**REPORT AND RECOMMENDATION**

    This is a habeas corpus action brought under 28 U.S.C. § 2254 by a state prisoner. Petitioner Mario Jermaine Clarke is incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility in Muskegon, Michigan. Following a bench trial in the Berrien County Circuit Court, Petitioner was convicted of assault with the intent to commit great bodily harm less than murder, Mich. Comp. Laws § 750.84; first-degree home invasion, Mich. Comp. Laws § 750.110a; and three counts of armed robbery, Mich. Comp. Laws 750.529. On December 10, 2015, the trial court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12(1)(a), to 25 to 70 years imprisonment for the assault conviction and each of the armed robbery convictions. It also sentenced him to 20 to 70 years imprisonment for the home invasion conviction, with all sentences to run concurrently.

    Petitioner timely filed his habeas corpus petition on March 18, 2021.

    The petition raises three grounds for relief, as follows:

---

[1] Because James Scheibner is now the Warden at Muskegon Correctional Facility, he is substituted for Sherry Burt as the Respondent pursuant to Federal Rule of Civil Procedure 25(d) and the caption is amended as set forth above.

    I. Petitioner's due process rights to a fair trial [were] violated by the introduction of false and known perjured testimony from Trevor Sims, a key prosecution witness.

    II. Petitioner's Sixth Amendment right to the effective assistance of counsel was violated, where his trial attorney failed to take the proper steps to safeguard Petitioner's due process rights guaranteed by the U.S. Constitution.

    III. Petitioner was deprived of his right to the effective assistance of appellate counsel, where appellate counsel misrepresented the defense's theory of the case, and litigated losing claims on appeal, at the expense of ignoring stronger issues that [were] obvious from the record.

(Pet., ECF No. 1 at PageID.2.)

Respondent has filed an answer to the petition (ECF No. 11), stating that the petition should be denied because all grounds lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I recommend that the petition be denied.

## I. Factual background

On November 5, 2014, at around 5:00 a.m., Petitioner and two other individuals, Marcus McNear and Trevor Sims, broke into a house where Junior Baggett, his two adult children, Ashley and Steven, and Ashley's two small children lived. (ECF No. 12-13 at PageID.1213–14; ECF No. 12-17 at PageID.1562–63.) Junior was a medical marijuana caregiver and grew marijuana in his garage. (ECF No. 12-13 at PageID.1212.) Petitioner, McNear, and Sims had arrived at the house together in a red Neon that Sims had taken from his girlfriend without permission. (ECF No. 12-13 at PageID.1249; ECF No. 12-16 at PageID.1435.) The three men fled when the occupants discovered them. They took approximately $1,000 in $20 bills and some marijuana.

In response to the commotion, Ashley Baggett got into her car and drove down the driveway to chase the intruders. As she rounded a curve, she saw a red Neon and noticed a door closing. Ashley rammed the Neon with her car, and a car chase ensued, during which shots were fired from the Neon. (ECF No. 12-13 at PageID.1189–90.) Ashley pursued the Neon onto the

highway, with both vehicles traveling at a high rate of speed. (*Id.* at PageID.1191.) A short distance down the road, the Neon swerved and crashed into a curb at an intersection and the occupants fled on foot. (*Id.* at PageID.1192–93.) A passing motorist called 911 and directed law enforcement to the scene. (ECF No. 12-14 at PageID.1314–15.) When the police arrived, they used a trained dog to locate Petitioner and McNear, who were next to a dumpster behind a building. (ECF No. 12-13 at PageID.1242–44.) The officers searched Petitioner and found a brown bandanna and $312, mostly in $20 bills. (*Id.* at PageID.1245.) A 9-millimeter handgun was hidden in the side of the dumpster, closer to Petitioner. (*Id.* at PageID.1245–46.) In the immediate area, the officers found two surgical masks, one of which contained Petitioner's DNA. (ECF No. 12-14 at PageID.1272–73; ECF No. 12-15 at PageID.1348.) The police found Sims walking along another road, carrying about $1,000 in $20 bills. (ECF No. 12-14 at PageID.1265.) The police searched the Neon and found black trash bags, a marijuana plant, empty shell casings, a brown bandanna matching the bandanna found on Petitioner, a crowbar, and a lot of dirt. (ECF No. 12-13 at PageID.1246; ECF No. 14 at PageID.1300, 1302–03.)

Petitioner was charged with assault with the intent to commit great bodily harm less than murder, first-degree home invasion, and three counts of armed robbery. Following a multi-day bench trial before Circuit Court Judge Gary J. Bruce, Petitioner was convicted of all charges. The trial court sentenced Petitioner as set forth above.

On direct appeal to the Michigan Court of Appeals, Petitioner raised the following issues through counsel:

I. There was insufficient evidence to prove beyond a reasonable doubt that Defendant committed the alleged crimes. Alternatively, the verdicts were against the great weight of the evidence.

II. Defendant is entitled to a *Lockridge* remand, now that the mandatory sentencing guidelines have been declared unconstitutional.

(ECF No. 12-28 at PageID.2360.) In addition, Petitioner filed a pro per Standard 4 brief raising the following issues:

    I. Defendant was denied his state and federal due process rights where his conviction was obtained through the use of false and perjured testimony.

    II. Trial and appellate counsel were ineffective for not filing motions for new trial due to the prosecution's use of Trevor Sims's perjured testimony.

(*Id.* at PageID.2387.) The court of appeals affirmed Petitioner's convictions in an unpublished opinion issued on October 17, 2017.  (Mich. Ct. App. Oct. 17, 2017 Op., *id.* at PageID.2253–58.)

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims he had raised in the court of appeals, except his claim that he was entitled to a *Lockridge* remand. By order entered July 27, 2018, the Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. (Mich. S. Ct. Order, ECF No. 12-29 at PageID.2460.)

On June 14, 2019, Petitioner filed a motion for relief from judgment in the trial court, raising numerous issues, including the witness false testimony/perjury and ineffective assistance of trial and appellate counsel issues he had raised on direct appeal. (ECF No. 12-27.) On October 15, 2019, the trial court denied Petitioner's motion for relief from judgment. (Trial Ct. Oct. 15, 2019 Order, ECF No. 12-30 at PageID.2590–97.) The trial court denied the motion pursuant to Mich. Ct. Rule 6.508(D)(2) and (3) on the grounds that Petitioner failed to show good cause for failing to raise the issues previously and because several issues were previously raised and decided against Petitioner in a prior appeal.

Petitioner subsequently filed a delayed application for leave to appeal to the Michigan Court of Appeals raising the same claims in his motion for relief from judgment. The court of appeals denied the application on June 12, 2020, because Petitioner "failed to establish that the trial court erred in denying the motion for relief from judgment." (Mich. Ct. App. Oct. 17, 2017

4

Order, ECF No. 12-30 at PageID.2494.) Petitioner then filed an application for leave to appeal to the Michigan Supreme Court raising the same claims as he did in the Michigan Court of Appeals. The supreme court denied his application on February 2, 2021, because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (ECF No, 12-31 at PageID.2628.)

Petitioner did not file a petition for writ of certiorari to the United States Supreme Court.

## II.  AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of

the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.  Analysis

A.  **False Testimony**

In his first ground, Petitioner contends that the prosecutor violated his due process right to a fair trial by presenting the testimony of Trevor Sims with knowledge that it was false. As part of a plea agreement with a maximum sentence of seven years, Sims had agreed to testify truthfully at Petitioner's trial. (ECF No. 12-16 at PageID.1401.) Sims said that he was not happy with his sentence and did not want to testify at the trial. (*Id.* at PageID.1402–02.) Shortly into his testimony, Sims became cagey with his testimony about who drove the Neon to the Baggett house, and it soon became clear that he was seeking to minimize Petitioner's role:

> Q   Were you driving?
> A   I don't remember.
> Q   You don't remember if you were driving?
> Q   I don't remember who drove away from Meijer. I think I drove away from it though.
>     . . . .
> Q   Isn't it true that Mario Clarke was driving because he knew where the address was?
> A   Isn't it what?
> Q   True that Mario Clarke was driving because he knew where the address was?
> A   I don't know. I don't remember.
> Q   You don't remember? Do you remember talking to detectives in this case about what happened?
> A   Yeah.
> Q   Talked to them on two occasions. Is that right?
> A   Yeah.
> Q   First time you talked to them you wouldn't tell them anything. Would that be fair to say?
> A   Yeah.
>     . . . .
> Q   And then you talked to them the next day. Right?
> A   Yeah.
> Q   So the first time you talked to them was the day you got arrested. Right?
> A   I think. Yeah.
> Q   Okay. And then you talked to them again the next day. Right?
> A   Yeah.
> Q   And you actually asked to talk to them that day. Right?
> A   Yeah.
>     . . . .

7

| | |
|---|---|
| Q | No. The line that I pointed to you where it talks about you telling the detectives Mario Clarke was driving the car down to the house. Does that refresh your memory about whether or not you told the detectives that? |
| A | I mean, yeah. |
| Q | So yes, you did tell the detectives that? |
| A | Yeah, but I--I mean I was saying anything at that point for me to get lesser time. |
| | . . . . |
| Q | And then the second time they interviewed you it was at your request. Right? |
| A | Right. |
| Q | You wanted to talk to them. And when they started talking to you[, you] weren't giving them all the correct information were you? |
| A | No. |
| Q | No. And then you actually broke down crying didn't you? |
| A | I mean, yeah. |
| Q | Yeah. And then you started telling them the story. Right? |
| A | Right. |
| | . . . . |
| Q | All right. So after you broke down crying, after you gave the detectives some other information you broke down crying and you started telling them the truth. Isn't that right? |
| A | Yeah. I told them a whole different story. |
| | . . . . |
| Q | All right. And in that truth you said that Mario drove to the house? |
| A | Yeah. |
| Q | All right. And that was the truth? |
| A | Yeah. |
| Q | So what's going on here today? Is it because you're sitting in court and Mr. Clarke is sitting here you don't want to say anything bad about Mr. Clarke? What's going on? |
| A | I mean, I won't say that. |
| Q | You want to keep your deal don't you? |
| A | Yeah. |
| Q | But you don't really want to get Mr. Clarke in trouble do you? |
| A | No. |
| Q | All right. So you're kind of trying to walk that middle line, aren't you? |
| A | Yeah. |
| Q | All right. Let's talk about telling the truth. All right? Are you agreeing to tell the truth or are you going to still . . . walk that middle line? Because we can end this right now. |
| A | I mean I'm definitely telling the truth. |
| Q | All right. So let's start telling the truth. The truth is Mario Clarke drove that car to that house. Right? |
| A | Yeah. |

8

> Q      So when you told us that just a couple minutes ago that you think you drove, that was a lie?
> A      Yeah.
> Q      And that was a lie to protect Mario Clarke?
> A      Yeah.
> Q      Because you don't want to be a snitch? Right?
> A      Right.

(*Id.* at PageID.1427–33.) Through impeachment, the prosecutor continued to expose Sims's lies during his testimony. (*Id.* at PageID.1423–25, 1464–65.) Sims's lies were not lost on the trial judge:

> THE COURT: You lied to the police when they first questioned you, right?
> THE WITNESS: Right.
> THE COURT: Then you lied here in the courtroom. You got caught by both lawyers today, right?
> THE WITNESS: Right.
> THE COURT: You got caught lying, right in this courtroom, right in front of me committed perjury, correct?
> THE WITNESS: Right.

(ECF No. 12-17 at PageID.1623.) Following the trial, the prosecution moved to vacate Sims's plea based on his perjured testimony at Petitioner's trial. (ECF No. 12-24 at PageID.1913.)

In denying this and Petitioner's other claims of error in his Standard 4 brief, the Michigan Court of Appeals stated:

> Finally, we note that defendant raised several additional claims of error in his brief filed on his own behalf under Administrative Order No. 2004-6, Standard 4. He argued that the prosecution obtained his conviction through perjured testimony and engaged in other misconduct. He also claimed that his trial and appellate counsel were ineffective. We have carefully considered these additional claims of error and conclude that they are without merit.

(ECF No. 12-28 at PageID.2258 n.4.) The court of appeals' conclusion that this claim was "without merit" constitutes a decision on the merits that is entitled to AEDPA deference. *Harrington v. Richter*, 562 U.S. 86, 98–100 (2011).

To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a petitioner must show that the statements were actually false,

9

that the statements were material, and that the prosecutor knew they were false. *Peoples v. Lafler*, 734 F.3d 503, 516 (6th Cir. 2013); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). Furthermore, a habeas petitioner must show that a witness's statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517–18 (6th Cir. 2000).

The Michigan Court of Appeals reasonably determined that Petitioner's false testimony claim lacked merit. This holding was based on a reasonable determination of the facts at trial, as set forth above. Those facts demonstrate that the prosecutor was confronted with a witness—Sims—who testified falsely during trial and exposed those lies by referencing Sims's prior statements to the police, as well as his motivation to lie (to avoid incriminating Petitioner). As the transcript shows, the trial judge was aware that Sims had committed perjury and considered this fact when weighing the evidence in making his findings in support of the verdict. (ECF No. 12-21 at PageID.1890.) Nothing suggests that the prosecutor had any idea that Sims would commit perjury until she was confronted with his false testimony during the trial, and she handled it appropriately. The prosecutor's subsequent motion to vacate Sims's plea agreement was nothing more than an acknowledgement that Sims failed to keep his part of the bargain by testifying truthfully at trial. In short, Petitioner failed to demonstrate that the prosecutor knowingly presented false testimony.

Therefore, this ground lacks merit.

### B.     Ineffective Assistance of Trial Counsel

Petitioner asserts that his trial counsel was ineffective for failing to object to Sims's testimony and moving to have it stricken from the record or, alternatively, for not filing a motion for a new trial based on the verdict being compromised by Sims's testimony. (ECF No. 2 at

PageID.36.) This claim is governed by the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating claims of ineffective assistance of counsel. To establish this claim, petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, considering the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland's* high bar is never an easy task,' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Because the standards under both *Strickland* and Section 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question [before the habeas court] is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id.*

The court of appeals' determination that this claim lacked merit was also reasonable. Contrary to Petitioner's contention, his trial counsel had no reason to object to Sims's testimony because the prosecutor had already brought Sims's perjury to light by impeaching him with his prior statements to the police and exploring his motivation to lie during her examination. In addition, as the trial judge observed, Petitioner's trial counsel also exposed Sims's false testimony through effective cross-examination. As the trial judge was fully aware of Sims's perjury, there was no danger that he was misled by it. He clearly was not. And, as noted above, he accounted for Sims's lies in weighing his testimony, crediting it where it was consistent with other testimony and evidence presented in the case and rejecting it where it was shown to be false.

Petitioner also fails to demonstrate prejudice. Sims's testimony was not the proverbial "nail in the coffin" for the guilty verdicts. It was simply one piece of a broad array of evidence, including McNear's testimony, that the trial judge cited as support for the convictions. Petitioner thus fails to show that an objection or motion for a new trial based on Sims's testimony would have altered the outcome of the trial.

This argument thus lacks merit.

C.      **Ineffective Assistance of Appellate Counsel**

In his final claim, Petitioner argues both of his appellate counsels were ineffective for failing to raise the stronger knowing-false-testimony claim on appeal.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. But the boundaries of professionally reasonable conduct change somewhat in the appellate context. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To

require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.

The court of appeals' determination that this claim was meritless is neither contrary to, nor an unreasonable application of, *Strickland*. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). For the reasons set forth above, the arguments that counsel did raise on appeal were clearly stronger than Petitioner's false evidence argument. Therefore, Petitioner is not entitled to habeas relief on this claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, I would conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the Court deny Petitioner's habeas petition. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court certify that an appeal would not be taken in good faith.

Dated: November 21, 2022	/s/ Sally J. Berens
	SALLY J. BERENS
	U.S. Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).